UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ERIC BREEZE BROWN,<br>    Plaintiffs, | CIVIL ACTION NO.<br>3:16-cv-00229 (JCH) |
| v. | |
| ROBERT ROSE ET AL.,<br>    Defendants. | JULY 31, 2018 |

**RULING RE: MOTION FOR SUMMARY JUDGMENT (DOC. NO. 60)**

**I.    INTRODUCTION**

Plaintiff Eric Breeze Brown ("Brown") brings this action pursuant to section 1983 of title 42 of the United States Code against the defendants, Correctional Officer Robert Rose ("Officer Rose") and Captain Dino Cichetti ("Captain Cichetti") of the State of Connecticut Department of Correction ("DOC").  See generally Amended Complaint ("Am. Compl.") (Doc. No. 31).  Brown alleges that Officer Rose sexually assaulted him when he was an inmate at the Carl Robinson Correctional Institution, and that Captain Cichetti failed to adequately investigate the incident.  Id. at ¶¶ 1, 47.  Brown sues both defendants in their individual capacities for money damages for violating his rights under the Eighth and Fourteenth Amendments to the United States Constitution.  Id. at ¶¶ 30, 47.  In addition, Brown brings several state law claims against Officer Rose for battery, assault, and infliction of emotional distress.  Id. at ¶¶ 32–46.

Officer Rose and Captain Cichetti now move for summary judgment.  See generally Motion for Summary Judgment ("Defs.' Mot.") (Doc No. 60).  They argue, inter alia, that (1) Brown failed to properly exhaust his administrative remedies; (2) Officer Rose did not sexually assault Brown, but instead conducted a lawful pat-down search; and (3) both Officer Brown and Captain Cichetti are entitled to qualified immunity.  See

1

generally Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Defs.' Mem.") (Doc. No. 60-1).

For the following reasons, the defendants' Motion for Summary Judgment (Doc. No. 60) is granted.

## II. FACTS

Brown was an inmate at the Carl Robinson Correctional Institution from March 30, 2011, until February 25, 2015, when he was transferred to Osborn Correctional Institution. Defendants' Local Rule 56(a)1 Statement ("Defs.' L.R. 56(a)1") (Doc. No. 60-2) at ¶¶ 2, 81; Plaintiff's Local Rule 56(a)2 Statement ("Pl.'s L.R. 56(a)2") (Doc. No. 64-2) ¶¶ 2, 81. On the morning of February 19, 2015, Brown was working in the kitchen. Defs.' L.R. 56(a)1 at ¶ 16; Pl.'s L.R. 56(a)2 at ¶ 16. That same morning, Officer Rose was posted at the kitchen door, where he searched inmates before they left the kitchen area. Defs.' L.R. 56(a)1 at ¶¶ 16, 42; Pl.'s L.R. 56(a)2 at ¶¶ 16, 42.

At approximately 7:10 a.m., Brown was stocking gloves in the kitchen. Plaintiff's L.R. 56(a)2 Statement of Additional Facts ("Pl.'s Additional Facts") (Doc. No. 64-2) at ¶ A. Officer Rose came up behind Brown while he was crouched down and said in a suggestive tone: "Wow, do you work out?" Id. at B. Brown responded: "Can I help you?" Id. Officer Rose replied in the negative and then left. Id.

At approximately 7:30 a.m., Brown joined a line of inmate workers who were waiting to be searched by Officer Rose before exiting the kitchen area. Defs.' L.R. 56(a)1 at ¶¶ 42, 43; Pl.'s L.R. 56(a)2 at ¶¶ 42, 43. Inmates who left the kitchen were searched in order to prevent them from transporting contraband. Defs.' L.R. 56(a)1 at ¶ 46; Pl.'s L.R. 56(a)2 at ¶ 46. Brown was in line to leave the kitchen because he needed to retrieve sanitizer buckets from the chow hall and bring them back to the kitchen.

2

Defs.' L.R. 56(a)1 at ¶ 43; Pl.'s L.R. 56(a)1 at ¶ 43.

Officer Rose claims that he performed a pat-down search of Brown in accordance with the appropriate prison procedures. Defs.' L.R. 56(a)1 at ¶¶ 22, 48. Brown states that Officer Rose did not engage in a routine pat-down search. Additional Facts at ¶¶ D, E, F. Instead, Officer Rose ordered Brown to face the wall and then proceeded to sexually assault Brown by (1) "vigorously massaging Brown's shoulders"; (2) "pushing Brown up against the wall"; (3) "kicking Brown's feet apart"; (4) "continuously and wildly fondling Brown's chest under Brown's shirt"; (5) "pulling and bending Brown's leg backwards up into the air so [Officer] Rose was in a dominating position"; (6) "grabbing, raising, and squeezing Brown's buttocks"; and (7) "bringing his hands around to the front of Brown's groin area and to the sides of Brown's penis." Id. at ¶ D. Another DOC Correctional Officer, who was in the kitchen at the time of the alleged assault, intervened and pulled the two men apart. Defs.' L.R. 56(a)1 at ¶ 62; Additional Facts at ¶ H.

Brown states that Officer Rose sexually harassed him again, after Brown finished his shift in the kitchen at 11 a.m. Id. at ¶¶ K, L. Specifically, Officer Rose asked Brown in a suggestive tone: "What, you don't like the way I feel you up?" Id. at ¶ L.

Brown reported the incident to various DOC employees, including Captain Cichetti. Defs.' L.R. 56(a)1 at ¶ 69; Additional Facts at ¶¶ M, N. Brown also submitted several written complaints to DOC and contacted the Connecticut State Police. Additional Facts at ¶ O.

On February 24, 2015, Brown met with Captain Cichetti and State Police Trooper Stebbins ("Trooper Stebbins"). Additional Facts at ¶¶ P, Q. At the meeting, Brown

3

attempted to tell his story of the sexual assault. Id. at ¶ Q. However, he was stopped short, told that "nothing happened," and informed that the State Police would not investigate the matter further. Id.

On February 25, 2015, Brown called the State Police again to report the incident. Defs.' L.R. 56(a)1 at ¶ 73; Id. at ¶ S. On the same day, Brown met with Captain Cichetti for a second time. Id. According to Brown's sworn Affidavit, Captain Cichetti said during this conversation: (1) "Why are you so agitated?"; and (2) "Mr. Brown, everybody gets their ass felt up once in a while." Id. Later that day, Brown was transferred to Osborn Correctional Institution. Defs.' L.R. 56(a)1 at ¶ 81; Pl.'s L.R. 56(a)2 at ¶ 81. Brown remained there until his discharge on February 17, 2016. Defs.' L.R. 56(a)1 at ¶ 81; Pl.'s L.R. 56(a)2 at ¶ 81.

On February 10, 2016, Brown filed his first Complaint (Doc. No. 1) as a pro se litigant against various DOC Officers at the Carl Robinson Correctional Institution. After retaining counsel, Brown filed an Amended Complaint on April 7, 2017, against Officer Rose and Captain Cichetti only.

## III.    LEGAL STANDARD

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71–72 (2d Cir. 2016). Once the moving party has met its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 256, and present "such proof as would allow a reasonable juror to return a verdict in [its] favor," Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). "An issue of fact is

genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought."  LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).  "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted."  F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).  On the other hand, where "reasonable minds could differ as to the import of the evidence," the question must be left to the finder of fact.  Cortes v. MTA N.Y. City Transit, 802 F.3d 226, 230 (2d Cir. 2015) (quoting R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997)).

## IV. DISCUSSION

In his Amended Complaint, Brown alleges that Officer Rose and Captain Cichetti violated his Eighth Amendment and Fourteenth Amendment rights.  Am. Compl. at ¶¶ 30, 37.  Brown also brings various state law actions against Officer Rose.  Id. at ¶¶ 32–46.  The court addresses each of these claims in turn.  Before doing so, however, it considers the threshold question of whether Brown properly exhausted all available administrative remedies before filing this suit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

### A. Exhaustion of Administrative Remedies

The PLRA prevents inmates from bringing any federal action with respect to

5

prison conditions until they exhaust "such administrative remedies as are available."  42 U.S.C. § 1997e(a).  "The PLRA's exhaustion requirement applies to all inmate suits about prison life."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  Furthermore, the PLRA requires "proper exhaustion," meaning that an inmate must fully comply with the procedural rules of a particular prison's grievance system.  See Woodford v. Ngo, 548 U.S. 81, 93, 95 (2006).

In Ross v. Blake, the Supreme Court identified a single, "textual exception" to the PLRA exhaustion requirement, namely: while inmates must always exhaust available remedies, they need not exhaust remedies that are "unavailable" to them.  136 S. Ct. 1850, 1858 (2016).  The court recognized three circumstances in which "an administrative remedy, although officially on the books, is not capable of use to obtain relief."  Id. at 1859.  Specifically, exhaustion may be excused when (1) a procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use," because "no ordinary prisoner can discern or navigate it"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Id. at 1859–60.

"Because failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute."  Hubbs v. Suffolk Cty. Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015) (internal quotation marks, citations, and alterations omitted).  However, once the

6

defendant has established that "an administrative remedy was available in the sense that a grievance policy or procedure existed and covered the dispute at hand," the burden shifts to the plaintiff to prove an exception to exhaustion. Id. at 61 (internal quotation marks omitted); see also Scott v. Kastner-Smith, 298 F. Supp. 3d 545, 554 (W.D.N.Y. 2018) ("After the defendant satisfies its burden, the plaintiff may attempt to overcome the PLRA's exhaustion requirement by demonstrating . . . [an] exception[ ].") (quoting Powell v. Schriro, No. 14 Civ. 6207 (KPF), 2015 WL 7017516, at *6 (S.D.N.Y. Nov. 12, 2015)) (internal alterations omitted).

In this case, Brown was required to comply with the grievance procedures set forth in the Connecticut Department of Correction Administrative Directive 9.6 ("Directive 9.6").[1] Defs.' Exhibit 15 (Doc. No. 60-17); see also Shehan v. Erfe, No. 3:15-CV-1315 (MPS), 2017 WL 53691, at *6 (D. Conn. Jan. 4, 2017). Under this scheme, an inmate must file a grievance within thirty calendar days of the occurrence or discovery of the cause of the grievance. Directive 9.6, § 6(C). The grievance must be filed, in writing, on an Inmate Administrative Remedy Form (CN 9602). Id. at § 5(E)(1). If the inmate is not satisfied with the response to his grievance, or no response is provided within the thirty days, the inmate may file a grievance appeal. Id. at § 6(K).

In his Deposition, Brown concedes that he never filed a grievance about the alleged sexual assault. See Deposition of Eric Breeze Brown ("Brown Dep.") (Doc No. 64-4) at 143:11–25, 145:5–13. Brown notes that he did report the sexual abuse to the DOC pursuant to Administrative Directive 6.12 ("Directive 6.12"). Pl.'s L.R. 56(a)2 at ¶¶

---

[1] Inmate Administrative Remedies, DOC Administrative Directive 9.6 (2013), https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0906pdf.pdf?la=en.

7

85–88; Pl.'s Exhibit D (Doc. No. 64-6). However, while section 12 of Directive 6.12 does outline procedures for the reporting of sexual abuse by inmates, Directive 9.6 governs the administrative remedies for sexual abuse complaints. See Jones v. Johnson, No. 3:15-CV-1135 (DJS), 2017 WL 1843692, at *4 (D. Conn. May 8, 2017) ("An inmate in a Connecticut state correctional facility who wishes to file a grievance must follow the procedure set forth in Department of Correction Administrative Directive 9.6."). Thus, compliance with Directive 6.12 cannot substitute for proper exhaustion of the remedies in Directive 9.6.

Nevertheless, the court will not grant summary judgment on the basis of Brown's failure to exhaust because a reasonable fact finder could conclude that Captain Cichetti misled Brown as to the requirements of the grievance process, thereby rendering his administrative remedies unavailable. See Riles v. Buchanan, 656 F. App'x 577, 580 (2d Cir. 2016) ("Administrative remedies are not 'available' if prison officials 'interfere with an inmate's pursuit of relief' by misleading him to think that he has done everything necessary to initiate the grievance process . . . .") (quoting Ross, 136 S. Ct. at 1860 n.3) (internal alterations omitted). Brown testifies that, in his first meeting with Captain Cichetti and Trooper Stebbins, he attempted to tell his story about the sexual assault, but was cut short and told that "nothing happened." See Additional Facts at ¶ Q; Brown Dep. at 133–134. In his second meeting, Brown was told that "everybody gets their ass felt up once in a while," before being informed that "the matter was closed." See Additional Facts at ¶¶ S, T; Brown Dep. at 134. Brown claims that these meetings led him to incorrectly believe that he had exhausted all available administrative remedies. See Additional Facts at ¶¶ R, U; Plaintiff's Memorandum of Law in Support of Objection

8

to Motion for Summary Judgment ("Pl.'s Mem.") (Doc. No. 64-1) at 7–8.

On the other hand, the defendants claim that these meetings were held to determine whether Brown's allegations would be investigated for criminal charges or as an incident under the Prison Rape Elimination Act (PREA). See Defs.' L.R. 56(a)1 at ¶¶ 69, 72, 73; Defs.' Mem. at 5–6. They suggest that these meetings did not concern Brown's administrative remedies under Directive 9.6. See Brown Dep. at 151:6–16. However, even if Captain Cichetti and Trooper Stebbins intended to only meet with Brown to discuss potential PREA or criminal investigations, their particular actions and statements could still lead Brown into believing that he had exhausted his administrative remedies. Given the context, the officials' ambiguously broad statements, such as "the matter was closed" or "nothing happened," could be interpreted as terminating Brown's administrative claims. Likewise, a reasonable jury could conclude that the officials' conduct, such as preventing Brown from telling his story, misled Brown into believing that he had no administrative remedy. In short, Brown's testimony raises triable issues of fact as to whether the officials' statements and actions during these meetings were so misleading as to render his administrative remedies unavailable. As such, the court will not grant summary judgment for failure to exhaust. Cf. Williams v. Suffolk Cty., No. 11-CV-5198 JFB AKT, 2012 WL 6727160, at *6 (E.D.N.Y. Dec. 28, 2012) (excusing exhaustion where the plaintiff testified that he withdrew his grievance prematurely because of misrepresentations by prison officials); Braham v. Perelmuter, No. 3:15-CV-1094 (JCH), 2017 WL 3222532, at *10 (D. Conn. July 28, 2017) (excusing exhaustion where a prison official misleadingly suggested in a grievance response that the plaintiff had exhausted his administrative remedies); Carter v. Revine, No. 3:14-CV-01553

9

(VLB), 2017 WL 2111594, at *11 (D. Conn. May 15, 2017) (a prison official's statement about the grievance appeal process "raises the potential that [the plaintiff] was thwarted from taking advantage of a grievance process through machination or misrepresentation") (internal quotation marks and alterations omitted).

      B.     <u>Constitutional Claims Against Officer Rose</u>

Brown alleges that Officer Rose violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution. Am. Compl. at ¶ 30. While "sexual abuse by a corrections officer can give rise to an Eighth Amendment claim," <u>Crawford v. Cuomo</u>, 796 F.3d 252, 257 (2d Cir. 2015), Brown has not alleged any facts that would support an independent Fourteenth Amendment claim against Officer Rose. Thus, the court assumes that Brown referenced the Fourteenth Amendment in his Amended Complaint because the Eighth Amendment applies to state correctional officers through the Due Process Clause of the Fourteenth Amendment. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 296–97 (1991). The court does not interpret the Amended Complaint as implicitly asserting an independent Fourteenth Amendment claim against Officer Rose. <u>Cf.</u> <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989) (declining to analyze plaintiff's overlapping Fourth and Fourteenth Amendment claims under a "generalized notion of substantive due process" when the "Fourth Amendment provides an explicit textual source of constitutional protection.").

Officer Rose argues that his conduct did not violate Brown's Eighth Amendment rights, but instead constituted a lawful pat-down search. Defs.' Mem. at 7–11. He also raises the affirmative defense of qualified immunity. <u>Id.</u> at 20–22. For the reasons stated below, the court dismisses Brown's constitutional claims against Officer Rose on qualified immunity grounds, without reaching the question of whether Brown's Eighth

10

Amendment rights were violated.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Regarding the second prong, a right is "clearly established . . . when, at the time of the challenged conduct, the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Id. at 741 (internal quotation marks and alterations omitted). While courts "do not require a case directly on point, [ ] existing precedent must have placed the statutory or constitutional question beyond debate." Mullenix v. Luna, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (quoting Ashcroft, 563 U.S. at 741). The Supreme Court has cautioned against "defin[ing] clearly established law at a high level of generality." Ashcroft, 563 U.S. at 742. Instead, "[t]he dispositive question is whether the violative nature of particular conduct is clearly established." Mullenix, 136 S. Ct. at 308 (internal quotation marks omitted and emphasis in original).

Courts "are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236; see also

11

Winfield v. Trottier, 710 F.3d 49, 54 (2d Cir. 2013). It is "often appropriate" to first consider the constitutional violation prong and then consider the clearly established prong. Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 429 n.9 (2d Cir. 2009). However, the Supreme Court has also recognized that this sequence "sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case," such as when "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." Pearson, 555 U.S. at 236–37. In such instances, it may be prudent for the court to start with the clearly established prong. See Ashcroft, 563 U.S. at 735 ("Courts should think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case.") (internal quotation marks omitted).

Here, it is plain that Officer Rose's conduct did not violate a clearly established right. At the time of the alleged incident (February 19, 2015), the standard set forth in Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997) governed Eighth Amendment claims arising from sexual abuse in prison. "Although Boddie held that inmate sexual abuse could, in principle, violate the Eighth Amendment, it concluded that a 'small number of incidents in which the plaintiff allegedly was verbally harassed, touched, and pressed against without his consent' were insufficient to state a claim." Crawford v. Cuomo, 721 F. App'x 57, 59 (2d Cir. 2018) (quoting Boddie, 105 F.3d at 861). Thus, "the court [in Boddie] held that the plaintiff's Eighth Amendment rights were not violated where the plaintiff claimed a corrections officer 'made a pass' at him, squeezed [his] hand, touched his penis, called him a 'sexy black devil,' and pressed her breasts to his

12

chest and her vagina to his penis." Williams v. Cmty. Sols., Inc., 932 F. Supp. 2d 323, 330 (D. Conn. 2013) (quoting Boddie, 105 F.3d at 859). Comparing Brown's allegations with those in Boddie, the court cannot conclude that the violative nature of Officer Rose's conduct was clearly established under the standard set forth in Boddie. Brown alleges that Officer Rose verbally harassed him on two occasions and physically assaulted him on one occasion by massaging Brown's shoulders, "fondling Brown's chest," "squeezing Brown's buttocks," and "bringing his hands around to the front of Brown's groin area and to the sides of Brown's penis." Additional Facts at ¶¶ B, D, L. Thus, like the plaintiff in Boddie, Brown asserts "a small number of incidents in which he allegedly was verbally harassed, touched, and pressed against without his consent." Boddie, 105 F.3d at 861. Moreover, Officer Rose's alleged misconduct is no more egregious than the defendant's alleged conduct in Boddie. As a result, while "[t]he isolated episodes of harassment and touching alleged by [Brown] are despicable," they fail to state an Eighth Amendment claim under the standard set forth in Boddie. Id.; see also Rosenberg v. Coon, No. 12 CV 3803 VB, 2013 WL 1223516, at *3 (S.D.N.Y. Mar. 27, 2013) ("Courts within this Circuit applying Boddie to similar claims involving isolated instances of fondling by prison officers during pat-down frisks have held those claims are insufficient to state or establish an Eighth Amendment claim. . . A single instance of rubbing or pressing of private parts, if true, is despicable, but is likewise insufficient to state a claim.").

Importantly, Officer Rose is entitled to qualified immunity notwithstanding the changes to the Boddie standard that occurred shortly after February 19, 2015. On August 11, 2015, the Second Circuit announced in Crawford v. Cuomo that courts were

13

construing the Boddie standard "too narrowly." 796 F.3d at 254. The court explained that the application of the Boddie rule must track "the evolving standards of decency that mark the progress of a maturing society," including the fact that the "sexual abuse of prisoners, once passively accepted by society, deeply offends today's standards of decency." Id. at 254, 259. "Accordingly, conduct that might not have been seen to rise to the severity of an Eighth Amendment violation 18 years ago may now violate community standards of decency, and for that reason, . . . the officer's conduct in Boddie would flunk its own test today." Id. at 260.

However, Brown does not benefit from Crawford because the decision was issued nearly six months after Officer Rose's alleged sexual assault. Qualified immunity turns on whether a "right was 'clearly established' at the time of the challenged conduct." Ashcroft, 563 U.S. at 735 (emphasis added). Thus, to the extent that Crawford expanded inmates' rights under the Boddie standard, those new rights would not be clearly established at the time of Officer Rose's challenged conduct. Indeed, when deciding whether the defendants in Crawford were entitled to qualified immunity, the Second Circuit considered and rejected the plaintiffs' arguments for retroactively applying the Crawford decision to pre-Crawford conduct. See Crawford, 721 F. App'x at 58, 60. There, the court acknowledged that the defendants' conduct would not enjoy qualified immunity post-Crawford. Id. at 58. However, it concluded that the defendants were still entitled to qualified immunity because Crawford was not clearly established law in 2011, when the alleged violations took place. Id. at 59. The fact that Officer Rose's conduct occurred in 2015, rather than 2011, does not alter this conclusion. Courts in this Circuit continued to adhere to a narrow interpretation of the Boddie

14

standard up until Crawford was decided. See, e.g., Rosenberg v. Coon, No. 12 CV 3803 VB, 2013 WL 1223516, at *3 (S.D.N.Y. Mar. 27, 2013) (concluding that plaintiff's allegations of sexual harassment during a single pat-down search did not state a cause of action under Boddie); Williams, 932 F. Supp. 2d at 330 (dismissing plaintiffs' claims under Boddie because they only concerned a small number of isolated incidents that included some physical contact); Crawford v. Cuomo, No. 9:13-CV-406 NAM/CFH, 2014 WL 897046, at *4 (N.D.N.Y. Mar. 6, 2014), rev'd and remanded, 796 F.3d 252 (2d Cir. 2015) (applying Boddie to dismiss plaintiffs' claims that defendant sexually assaulted him during pat-down search). As a result, Officer Brown is entitled to qualified immunity because his conduct on February 19, 2015, did not violate a clearly established federal right.

C. Constitutional Claims Against Captain Cichetti

Brown asserts that Captain Cichetti violated his Eighth and Fourteenth Amendment rights by (1) failing to adequately investigate his sexual assault allegations against Officer Rose; (2) intimidating and dissuading him from accessing the prison's grievance process; and (3) preventing him from pursuing a complaint under the PREA. See Am. Compl. at ¶ 47; Pl.'s Mem. at 18–19.

However, inmates do not enjoy a constitutionally protected right to have their grievances investigated. See DeAngelis v. Farinella, No. 3:16-CV-307 (MPS), 2017 WL 4683996, at *12 (D. Conn. Oct. 18, 2017); see also Dorlette v. Butkiewicus, No. 11-CV-1461 TLM, 2013 WL 4760943, at *22 (D. Conn. Sept. 4, 2013), dismissed (Mar. 27, 2014) ("The law is well established, that a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim.") (quoting Thorne v. Cuevas, No. 3:09CV1716 (SRU), 2012 WL 1050056, at *5 (D. Conn. Mar. 28,

2012)) (internal quotation marks omitted); Gomez v. Sepiol, No. 11-CV-1017SR, 2014 WL 1575872, at *15 (W.D.N.Y. Apr. 11, 2014) ("Grievance procedures are the internal procedures and requirements of DOCCS, and as such, prison inmates neither have a constitutionally protected right to a grievance procedure . . . nor, as a general rule, is there a federal right to have them properly administered.") Thus, Brown cannot base a constitutional claim on the grounds that Captain Cichetti deprived him of an administrative remedy.

Likewise, interference with a PREA investigation does not give rise to a constitutional violation. Because the PREA does not create a private right of action for prisoners, Brown cannot show that he was actually injured if Captain Cichetti prevented him from pursuing a PREA claim. See Abrams v. Erfe, No. 3:17-CV-1570 (CSH), 2018 WL 691714, at *16 (D. Conn. Feb. 2, 2018) (dismissing claims that defendants interfered with plaintiff's PREA investigation); Jones v. Forbes, No. 3:16CV14 (VAB), 2016 WL 4435081, at *3 (D. Conn. Aug. 19, 2016) ("The [PREA] does not grant any specific rights to inmates."). As such, the court dismisses Brown's constitutional claims against Captain Cichetti.

### D. State Law Claims Against Officer Rose

Having dismissed all of Brown's federal law claims, the court declines to exercise its supplemental jurisdiction over Brown's state law claims against Officer Rose for battery, assault, and infliction of emotional distress. Where "the district court has dismissed all claims over which it has original jurisdiction," it may decline to exercise supplemental jurisdiction over any remaining causes of action. 28 U.S.C. § 1367(c)(3). Indeed, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial

economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." DiLaura v. Power Auth. of State of N.Y., 982 F.2d 73, 80 (2d Cir. 1992) (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)); see also Artis v. D.C., 138 S. Ct. 594, 597–98 (2018) ("When district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims."). Brown has not identified any countervailing factors that would justify the exercise of supplemental jurisdiction, and none are readily apparent to the court. Given that Brown's constitutional claims provided the sole basis for federal jurisdiction, the court dismisses Brown's remaining state law claims without prejudice.

## V. CONCLUSION

For the foregoing reasons, the defendants' Motion for Summary Judgment (Doc. No. 60) is **GRANTED**. Brown's Eighth and Fourteenth Amendment claims are dismissed with prejudice; his state law claims are dismissed without prejudice; and the case is closed.

**SO ORDERED**.

Dated this 31st day of July 2018 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge